IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER HIGGINS,

    Plaintiff,

vs.                                                Civil No. 04-1169 WJ/DJS

BURLINGTON NORTHERN and
SANTA FE RAILWAY,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. 19).  Having reviewed the submissions of the parties and being fully advised on the law, I find the motion is well taken and will be granted.

**BACKGROUND**

    Plaintiff filed his Complaint in this case on October 14, 2004 alleging a single count of retaliation under Title VII.  Defendant filed the instant motion for summary judgment urging that Plaintiff cannot provide evidence of retaliation sufficient to create a genuine issue of material fact for trial.  Viewing the evidence in a light most favorable to Plaintiff as the Court must in deciding a motion for summary judgment, the pertinent facts may be summarized as follows.

Plaintiff began working for the Santa Fe Railway in 1993. In 1994, he received training to become a locomotive engineer. In September 1995, Santa Fe Railway merged with Burlington Northern Railway and became the Burlington Northern and Santa Fe Railway (BNSF). In November 2002, Plaintiff's employment was terminated for reasons not relevant to this case. In May 2003, Plaintiff filed a charge of discrimination with the EEOC, and Plaintiff filed a lawsuit regarding his termination on October 9, 2003.[1]

On October 24, 2003, Plaintiff was reinstated to his previous employment with BNSF based on a decision by the Public Law Board. On December 9, 2003, Plaintiff was the engineer on a train traveling east from Grants, New Mexico. During this trip, Plaintiff, who has been diabetic for more than 20 years, had a blood sugar problem and became incoherent. Plaintiff remembers nothing about the portion of the trip at issue in this case. During his diabetic episode, Plaintiff allowed the train to exceed the speed limit by 12 to 22 miles per hour on several occasions. According to the conductor, Plaintiff was irritable and engaged in heated discussions when the conductor asked about the speed of the train on several occasions. The conductor felt threatened during these conflicts with Plaintiff. Also during this trip, Plaintiff went past a "red signal" at Rio Puerco, New Mexico. The conductor had called the signal, but Plaintiff did not slow or stop the train. The conductor engaged the emergency stopping mechanism and stopped the train several engine lengths past the red signal. Plaintiff had to be assisted off the train because of his physical condition at the time. After eating a banana which usually increases his

---

[1] Defendant was granted summary judgment in this prior lawsuit. However, the grant of summary judgment in that case has no bearing on this case.

blood sugar by thirty points, Plaintiff's blood sugar level was 52. Plaintiff states that the longer a person has diabetes, the harder it is to recognize when the blood sugar is dropping.[2]

Operating a train in excess of the speed limit is a serious rule violation under the BNSF Policy on Employee Performance Accountability (PEPA). It is also a safety violation that results in decertification of the engineer for a period of 30 days by the Federal Railway Administration. Running a "red signal" is also a serious rule violation under the PEPA and results in a decertification of the engineer for 30 days by the Federal Railway Administration. Under the PEPA, one serious rule violation will result in a 30-day record suspension, and two serious rule violations within a 36-month period will subject an employee to dismissal.

Plaintiff was held out of service pending investigation of the alleged serious rule violations. The conductor was permitted to return to work on December 10 pending the outcome of the investigations. Investigation hearings were held on January 28, 2004. During the hearing, Plaintiff testified that he had been incoherent during the alleged serious rule violations because of his diabetes, but agreed that his diabetic condition on that date was probably due to his own negligence in failing to control his blood sugar. According to Plaintiff, he was not permitted to call his doctor as a witness at the hearing to testify about his diabetes and its correlation with his inability to operate the train on December 9, 2003. Following the hearings, BNSF's General Manager determined that the conductor and Plaintiff were equally responsible for an over speed violation. However, he determined that Plaintiff was solely responsible for the red signal violation. He concluded that the conductor was not responsible for the red signal violation

---

[2] Plaintiff does not offer expert testimony to support this contention but only his own testimony. For purposes of this motion only, the Court will accept this as admissible without further analysis.

because he had done everything in his power to control the train under the circumstances, including communicating with the engineer, calling out signals, and activating an emergency stop to prevent personal and property damage. The conductor received a 30-day record suspension for the single serious rule violation. Plaintiff was dismissed from his employment effective February 24, 2004 for committing two serious rule violations.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn

from those facts in a light most favorable to the nonmoving party.  <u>Worrell</u>, 219 F.3d at 1204; <u>Jeffries</u>, 147 F.3d at 1228.

**DISCUSSION**

The three-stage <u>McDonnell Douglas</u> burden shifting analysis applies to claims of retaliation under Title VII when no direct evidence of discrimination exists.  <u>See</u> <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1315-16 (10th Cir. 1999) <u>overruled on other grounds by</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002).  To survive summary judgment on a claim of retaliation, Plaintiff bears the initial burden of showing (1) that he engaged in protected activity; (2) that the Defendant took adverse employment action against him; and (3) that there exists a causal connection between the protected activity and the adverse action.  <u>Tran v. Trustees of the State Colleges in Colo.</u>, 355 F.3d 1263 (10th Cir. 2004).  Once Plaintiff makes this showing, Defendant must articulate a facially legitimate, nondiscriminatory reason for the adverse employment action.  <u>Wells v. Colo. Dept. of Transp.</u>, 325 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff must then respond by showing that the Defendant's asserted reasons for the adverse action are pretextual.  <u>Id.</u>

Defendant concedes, for purposes of the summary judgment motion, that Plaintiff engaged in protected activity when he filed his initial EEOC complaint in May 2003 and when he filed a lawsuit in early October 2003.  Defendant also concedes that Plaintiff was subjected to an adverse employment action when his employment was terminated on February 24, 2004.  Defendant argues that Plaintiff cannot make a prima facie showing of retaliation under Title VII because he cannot show a causal connection between his protected conduct and the adverse employment action.  By Defendant's calculation, more than three months elapsed between Plaintiff's protected

5

activity in May 2003 and October 2003 and his termination in February 2004. Thus, Defendant urges that there is insufficient temporal proximity between the protected activity and the adverse employment action to give rise to any inference of a causal connection. Defendant contends that, even if Plaintiff has met his burden of showing a prima facie case of retaliation, Plaintiff has no evidence to suggest that Defendant's proffered legitimate nondiscriminatory reason for its action is a pretext for retaliation.

Plaintiff argues that he has made a prima facie showing because he did not work for BNSF at the time of his protected activities, and BNSF was unable to retaliate against him until he was reinstated in late October 2003. Additionally, he contends that, while his reinstatement occurred in late October 2003, he did not actually begin working shifts until December 2003. Additionally, he contends that the adverse action began when he was taken out of service on December 9, 2003, and that this culminated in his termination on February 24, 2004.

A plaintiff's burden of establishing a prima facie case is not an onerous one. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). Thus, it would be inappropriate for this Court to impose a strict, mechanical rule with regard to the temporal proximity under the facts of this case. Defendant had no ability to retaliate against Plaintiff before his employment was reinstated. Plaintiff was taken out of service within seven weeks of his reinstatement, and, if Plaintiff's testimony is taken as true, within not more than two weeks after he actually began working shifts after his reinstatement. While he was not formally dismissed until February 24, 2004, he did not return to work after he was taken out of service on December 9, 2003, and it was the events of December 9, 2003 for which he was allegedly terminated. Accordingly, the Court concludes that the temporal proximity in this case is more properly characterized as a

period of a few weeks rather than a few months, and the Court will assume that Plaintiff has established a prima facie case of retaliation. Moreover, the circumstances in this case are sufficient to show a causal connection between the protected activity and the adverse employment action for purposes of Plaintiff's prima facie case.

Defendant contends that Plaintiff was dismissed in accordance with the PEPA because he had two serious rule violations within a 36 month period. Defendant states that going over speed and running a red signal endanger lives and property and can even cause fatalities.[3] Defendant has proffered a legitimate, nondiscriminatory reason for its decision to dismiss Plaintiff from his employment. Thus, the burden shifts to Plaintiff to show that a reasonable jury could find that Defendant's proffered reason is a pretext for retaliation.

In order to show pretext, a plaintiff is required to show that the defendant's tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason. Burn v. Bd. of County Com'rs of Jackson County, 330 F.3d 1275, 1283 (10th Cir. 2003). Plaintiffs typically show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003). A plaintiff need not always present additional evidence in order to show pretext; a plaintiff's prima facie case may itself cast sufficient doubt on a defendant's proffered nondiscriminatory reasons to satisfy his burden of showing pretext. English v. Colorado Dept. of Corrections, 248 F.3d 1002, 1009 (10th Cir. 2001).

---

[3]Red signals are often used to allow another train to pass in the opposite direction.

Plaintiff urges that there is more than sufficient evidence, in addition to the evidence supporting his prima facie case, from which a rational jury could conclude that Defendant's proffered reasons are a pretext for retaliation. First, he points out that he was taken out of service from December 9, 2003 until he was dismissed in February 2004 while the conductor, who was equally responsible for the running of the train on December 9, was permitted to return to work on December 10, 2003. Second, he notes that Defendant treated the over speed and the running of the red signal as two separate violations instead of a single violation even though they occurred on the same trip due to a single diabetic episode. He argues that BNSF considered mitigating circumstances in finding that the conductor was not responsible for the running of the red signal but refused to consider Plaintiff's diabetes as a mitigating factor for his violations. Plaintiff argues that similarly situated persons were treated differently than he because at least two other engineers who were found to have run red signals were not dismissed. While these engineers did not also have over speed violations during the same period of time, Plaintiff again argues that his red signal violation and over speed violation should have been treated as a single violation rather than two separate violations.

Taking Plaintiff's arguments in reverse, he has failed to show that any similarly situated persons were treated more favorably than he. While other persons did commit single violations without being dismissed, he has not shown that any other person committed two or more violations in the same trip without being dismissed. His argument that his violations should be treated as a single violation because they occurred on the same trip and allegedly were the result of a single medical incident is simply that - an argument. Plaintiff urges that the PEPA's stated purpose is to help employees with compliance in order to achieve their full potential. According

to Plaintiff, this stated purpose cannot be fulfilled if an employee is not provided an opportunity to make needed improvements, and improvements cannot be made when an employee is discharged after a single incident involving multiple violations. Plaintiff deduces from this that the PEPA's stated purpose is violated unless multiple violations occurring within a short time frame are treated as a single violation. However, Plaintiff has provided no evidence or legal authority to support that multiple violations within a certain time period or occurring during a single trip under certain circumstances must, as a matter of law, be treated as a single violation, and the Court will not override BNSF's business judgment by imposing such a rule. BNSF's decision to treat the red signal violation and the over speed violation as separate violations is not evidence of pretext.

BNSF's decision to discipline Plaintiff for his rule violations in spite of his medical condition is not evidence from which a reasonable jury could conclude that BNSF's proffered reason for discharging Plaintiff was a pretext for retaliation. Plaintiff contends that BNSF considered mitigating factors for the conductor who was on the train with Plaintiff but failed to consider Plaintiff's medical condition as a mitigating factor and thus treated Plaintiff and the conductor differently. BNSF did not conclude that the conductor had committed a red signal violation under mitigating circumstances; rather it concluded that, given the circumstances on December 9, 2003, the conductor did not commit a red signal violation. Conversely, BNSF concluded that Plaintiff had committed a red signal violation. Thus, BNSF did not treat the conductor and Plaintiff differently for similar conduct.

Plaintiff has shown that the conductor was permitted to return to work on December 10, 2003 while Plaintiff was held out of service through the investigation and until his dismissal from employment. Defendant contends that this difference in treatment is not material and is explained

9

by Defendant's concern regarding Plaintiff's incapacitation on December 9, 2003.  The Court finds that the differential treatment is material.  However, this difference is, itself, consistent with Defendant's proffered reason for dismissing Plaintiff from his employment.  Further, this difference, even when considered in conjunction with other evidence submitted by Plaintiff in support of his prima facie case, is insufficient to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003).  Defendant dismissed Plaintiff in accordance with the PEPA for two serious rule violations within a 36 month period.  Plaintiff does not dispute that he committed an over speed violation or a red signal violation, but only argues that BNSF's failure treat these as a single violation and consider his medical condition as mitigation is evidence of retaliatory intent.  His argument is, essentially, that BNSF's failure to maintain his employment in spite of these violations is a pretext for retaliation.

     To recapitulate, I conclude that Plaintiff has made a prima facie case of retaliation by showing (1) that he engaged in protected activity; (2) that the Defendant took adverse employment action against him; and (3) that there exists a causal connection between the protected activity and the adverse action.  Defendant has met its burden of articulating a facially legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment.  Plaintiff has failed to show that Defendant's proffered reason for its action is a pretext for retaliation.  Accordingly, Defendant is entitled to summary judgment with regard to Plaintiff's Title VII Retaliation Claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 19) is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE